UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IONA SANDERS                                          CIVIL ACTION

VERSUS                                               NO. 17-9733

CHRISTWOOD, L.L.C.                                    SECTION M (5)


**ORDER & REASONS**

Before the Court is a motion filed by defendant Christwood, L.L.C. ("Christwood") for summary judgment on the racial discrimination and whistleblower claims filed by plaintiff Iona Sanders ("Sanders").[1]  Having considered the parties' memoranda[2] and the applicable law, the Court grants Christwood's motion concluding (1) that Sanders cannot prevail on her racial discrimination claims because she did not demonstrate that she suffered an adverse employment action or that another similarly-situated employee of a different race received preferential treatment; and (2) that Christwood, as a non-profit institution, cannot be held liable under the Louisiana whistleblower statute.

## I.    BACKGROUND

This matter concerns allegations of racial discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, and a claim of retaliation under the Louisiana whistleblower statute, La. R.S. 23:967.  Christwood, a non-profit entity, operates a retirement community consisting of independent living, assisted living, nursing, and memory care

---

[1] R. Doc. 52.

[2] Sanders filed a memorandum in opposition to the motion. R. Doc. 55.  (Sanders' opposition is submitted *pro se* and is less a brief addressing the factual and legal issues raised by Christwood's motion, than it is a 39-page unsworn and after-the-fact statement of Sanders' recollection of events.)  Christwood filed a reply in further support of the motion.  R. Doc. 68.

units.[3]   Sanders, who is African-American and a registered nurse, began her employment with Christwood in September 2008.[4]   Sanders alleges that in March 2015, she orally accepted a promotion to the position of assisted living unit director, which was offered to her by Christwood's vice associate executive director, David Cook ("Cook"), who is white.[5]   According to Sanders, being a registered nurse is a required qualification for the directorship (which Christwood denies), and she performed the job duties of the position from March 2015 until she left her employment with Christwood in January 2017.[6]   Sanders further alleges that, although she was performing the duties of the assisted living unit director, Tami Perry ("Perry"), who is white, a licensed practical nurse, and Sanders' supervisor, was listed with the State of Louisiana as holding the title.   On December 5, 2016, Christwood filed the key personnel paperwork with the State to list Sanders as the assisted living unit director.[7]   Sanders also alleges that she was promised a raise to $50,000 per year, but was not paid that amount, "despite representations in various pay documents that she made nearly $58,000 annually."[8]   Moreover, Sanders alleges that she did not receive the annual director's bonus.[9]   Sanders contends that her pay discrepancy and the failure to change the paperwork with the State were due to racial animus.[10]

Sanders also claims that she was constructively discharged due to racial discrimination.[11] Sanders alleges that on December 19, 2016, an incident occurred in the assisted living unit that was required to be reported to the State.[12]   Sanders alleges that Perry and Cook asked her to alter

---

[3] R. Doc. 16 at 2.
[4] *Id.*
[5] *Id.*
[6] *Id.* at 2-3.
[7] *Id.* at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 3-4.
[12] *Id.* at 3.

paperwork reporting the incident, and she refused.[13]  Sanders further alleges that the African-American nursing personnel on duty at the time of the incident were fired, whereas the white nurse involved was not.[14]  Sanders claims that Cook told her she "made oversights" in relation to the December 19, 2016 incident and a separate incident concerning the administration of medicine, and as a consequence, on January 30, 2017, she was demoted to a non-supervisory role, which forced her to resign, resulting in constructive discharge.[15]  Further, Sanders alleges that she was constructively discharged for refusing to falsify records, which she claims is a violation of state law.[16]

## II.    PENDING MOTION

Christwood argues that it is entitled to summary judgment because Sanders cannot state a *prima facia* case of racial discrimination because she has failed to identify both an adverse employment action and a similarly-situated individual of a different race who was treated more favorably.[17]  Christwood further argues that Sanders' whistleblower claim must be dismissed as a matter of law because La. R.S. 23:967 does not apply to non-profit institutions, such as Christwood.[18]

Sanders maintains that she has carried her burden on summary judgment with respect to her racial discrimination claim.  For example, she responds that she was treated less favorably than Ian Thompson ("Thompson"), the white nurse on duty at the time of the December 19, 2016 incident, because only the black employees involved were fired or demoted, whereas the white

---

[13] *Id.* at 4-5.
[14] *Id.* at 5.
[15] *Id.*
[16] *Id.* at 6.
[17] R. Doc. 52-8 at 5-25.
[18] *Id.* at 2-3.

employee was not.[19]  She also argues that she could not locate "any recent changes" to La. R.S. 23:967 that exempt non-profit entities from the law.[20]

## III.   LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).  The substantive law identifies which facts are material.  *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a

---

[19] R. Doc. 55 at 10 & 34.  In addition, Sanders asks the Court to consider other evidence of purported racial discrimination such as her exclusion from a directors' meeting and a directors' luncheon, her name not being on her office door, and her not receiving a master key.  None of these incidents is alleged in the complaint.  Further, none qualifies as an adverse employment action under Title VII.  Thus, the Court will not consider them in analyzing the events that are alleged.

[20] *Id.* at 3.

whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P.

56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## B. Title VII

Title VII prohibits an employer from taking certain discriminatory actions against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing claims under Title VII can use either direct or circumstantial evidence to prove her case of intentional discrimination. *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)]." *Portis*, 34 F.3d at 328.

When a plaintiff relies on circumstantial evidence, as in this case, the plaintiff must first establish a *prima facie* case of discrimination by proving that: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was the subject of an adverse employment action; and (4) she was treated less favorably because of membership in the protected class than were other similarly-situated employees who were not members of the protected class, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 984-85 (5th Cir. 2015) (citation omitted). If a plaintiff makes this *prima facie* showing and thereby creates a presumption of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the action or decision. *Buisson v. Bd. of Supervisors of the La. Cmty. & Tech. Coll. Sys.* 592 F. App'x 237, 243 (5th Cir. 2014) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). Then finally, the burden shifts back to the plaintiff to show that

the defendant's proffered reason is pretextual.  *Id.*  However, the "ultimate burden" of persuasion that there was discrimination remains with the plaintiff at "all times."  *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Christwood concedes that Sanders, an African-American, is a member of a protected class, and that as a registered nurse she was qualified for the position at issue.  However, Christwood argues that Sanders cannot establish a *prima facie* case of discrimination because she cannot demonstrate that she was subjected to an adverse employment action or that she was treated less favorably than a similarly-situated employee who was not a member of the protected class. Further, Christwood argues that Sanders cannot establish that she was constructively discharged because a reasonable employee in similar circumstances would not have felt compelled to resign.

The Fifth Circuit has adopted "a strict interpretation of the adverse employment element," under which "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Par. Sch. Bd.,* 320 F.3d 570, 575 (5th Cir. 2003)).  "Rather, an adverse employment action consists of '*ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating.'"  *Id.* (quoting *Felton v. Polles,* 315 F.3d 470, 486 (5th Cir.2002)) (emphasis in *Pegram*).  Further, a demotion can qualify as an ultimate employment decision under Title VII.  *Id.* (citing *Sharp v. City of Houston,* 164 F.3d 923, 933 n.21 (5th Cir. 1999)).

Sanders identifies four actions she claims amount to adverse employment decisions – Christwood's alleged failure to timely list her with the State as the assisted living unit director, failure to raise her pay when she was promoted to the assisted living unit director position,

demoting her to a non-supervisory position, and causing her constructive discharge by means of

the alleged demotion. The issues regarding reporting Sanders' job title to the State, her pay, and

the purported constructive discharge do not constitute adverse employment actions. And, although

the demotion could be an adverse employment action, Sanders has failed to identify a similarly-

situated employee who was treated more favorably.

First, the alleged failure to timely notify the State of Sanders' promotion to assisted living

unit director does not qualify as an ultimate employment decision. Indeed, Sanders concedes that

despite this alleged failure on Christwood's part, she was performing the job duties of the assisted

living unit director. Nor is there any allegation or evidence that the failure to report the change in

job title actually affected a decision about hiring, granting leave to, discharging, promoting, or

compensating Sanders. To be sure, there is no allegation describing any adverse effect on Sanders

arising from the failure to report the promotion to the State. Further, Christwood's director of

human resources, Ladonna Allen ("Allen"), stated in her declaration that Sanders became the

manager of the assisted living unit in April 2015, not the director.[21] Sanders offers no probative

evidence to refute Allen's declaration.[22]

Next, Sanders' allegation regarding her pay has no merit. Sanders alleges that she was

promised $50,000 per year, but did not receive that amount. However, the undisputed payroll

evidence in the record proves that Sanders actually received a gross salary of $52,753.15 in 2015

---

[21] R. Doc. 52-4 at 7-8.

[22] Even if the failure to provide notice of the change in job title rose to the level of an adverse employment action, Sanders has not demonstrated that she was treated less favorably than a similarly-situated employee who was not in her protected class. Sanders points to Perry as her comparator on this issue, but Perry was not similarly situated since she had far more relevant work and management experience than Sanders. *See Ryburn v. Potter*, 155 F. App'x 102, 109 (5th Cir. 2005) (employees with more work experience are not similarly situated to those with less); *Wiseman v. New Breed Logistics, Inc.*, 72 F. Supp. 3d 672, 679-80 (N.D. Miss. 2014) (purported comparator had more experience and time in service than plaintiff so circumstances were not "nearly identical"). Nor did Sanders and Perry have the same supervisor or the same job duties.

and $57,955.38 in 2016, and before she quit in 2017, she was paid at the rate of $57,200 per year.[23]

Further, the unrebutted summary judgment evidence establishes that Sanders was not entitled to the directors' annual bonus because she was not actually a part of the directors' group.[24] Allen stated in her declaration that Sanders was never a director of Christwood, and thus, not entitled to the directors' bonus, but was eligible for and received the employees' bonus that is funded by Christwood's residents.[25] Further, Allen stated that, when Sanders became the manager of the assisted living unit, her payroll code was changed to "AIL Director" for accounting purposes only, and was not a reflection of her actual position at Christwood.[26]

Third, Sanders alleges that she was demoted from assisted living unit director to a non-supervisory skilled nursing position as a quality assurance coordinator. A transfer to a different position that is "objectively worse – such as being less prestigious or less interesting or providing less room for advancement" can qualify as a demotion, even if there is no reduction in pay, title, or grade. *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 799 (5th Cir. 2018); *Alvarado v. Tex. Rangers*, 942 F.3d 605, 612 (5th Cir. 2007). "However, where the evidence merely shows 'that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action.'" *Stringer*, 727 F. App'x at 799 (quoting *Pegram*, 361 F.3d at 283). Determining whether the new position is worse is an objective inquiry focusing on the qualities of the new position, not the employee's subjective preference for one position over another. *Alvarado*, 492 F.3d at 613-14 (citations omitted).

---

[23] *Id.* at 2-10; R. Doc. 52-7 at 9.
[24] R. Doc. 52-4 at 4.
[25] *Id.* at 5-7.
[26] *Id.* at 7-8. And, again, Sanders has not pointed to any similarly-situated employee not in her protected class who was paid more than she was.

Allen's January 30, 2017 letter to Sanders explaining the decision to transfer Sanders from the assisted living unit director position to the quality assurance coordinator position indicates that the transfer is a demotion based on Sanders' poor performance in the director's position.[27] The letter clearly indicates that Sanders is being relieved of director's responsibilities, but would retain the same pay and benefits.[28] Although the transfer qualifies as a demotion, Sanders has presented no evidence to carry her burden of establishing the fourth prong of a *prima facie* case of racial discrimination – namely, that there was a similarly-situated employee who was not a member of her protected class and was treated more favorably.

When a Title VII plaintiff proffers a fellow employee as a comparator, she must demonstrate that the employment actions at issue were taken "under nearly identical circumstances," such as

> when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been ***nearly identical*** to that of the proffered comparator who drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quotations, citations, and emphasis in original omitted) (emphasis added).

Sanders offers Thompson as a potential comparator. Sanders contends that she was treated less favorably than Thompson, a white nurse who was on duty at the time of the December 19, 2016 incident. According to Sanders, Thompson received only a warning in connection with the incident, whereas the African-American nursing employees involved, including her, were either

---

[27] R. Doc. 52-4 at 58.
[28] *Id.*

fired or demoted. Thompson and Sanders did not share nearly identical circumstances because different supervisors determined their status; indeed, Sanders was Thompson's supervisor.[29] In her declaration, Allen stated that Sanders herself made the decision to issue a written warning to Thompson, rather than fire him.[30] That Sanders acted in a supervisory capacity concerning the incident and the follow-up reporting, whereas Thompson did not, undermines the validity of Sanders' proposed comparator. Therefore, Sanders and Thompson were not subjected to nearly identical circumstances, and Sanders has not stated a *prima facie* case of racial discrimination based on the demotion.[31]

Finally, Sanders' constructive discharge claim also fails. Under the doctrine of constructive discharge, "an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). Thus, "[a]n employer is responsible for a constructive discharge in the same manner that it is responsible for the outright discriminatory discharge of a charging party" under Title VII. *Id.* (quotation omitted). "In determining whether an employer's actions constitute a constructive discharge, [a court] ask[s] whether working conditions became 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 452-53 (5th Cir. 2014) (quoting *Suders*,

---

[29] R. Doc. 52-4 at 8.

[30] *Id.* at 8-9.

[31] Moreover, Sanders' claim based on the demotion also fails because Christwood's decision to transfer her to a non-supervisory position was based on legitimate, nondiscriminatory reasons, which Sanders has not demonstrated to be pretextual. *See Auguster v.Vermillion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Evans v. City of Houston*, 246 F.3d 344, 349-51 (5th Cir. 2001). Sanders offers no evidence or argument to discredit Christwood's reasons for her demotion (*viz.*, her failure to timely submit the incident report; her refusal to obtain a clarified, non-falsified incident report; and her failure to report the untimely administration of medicines), much less to demonstrate that they were motived by race.

542 U.S. at 141). Courts in the Fifth Circuit consider seven factors in determining whether a

reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012) (citation omitted).

"Discrimination alone, without aggravating factors, is insufficient for a claim of constructive

discharge …." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citations omitted).

Sanders argues that she felt compelled to resign after she was reassigned to a non-

supervisory position in the skilled nursing unit. However, the record does not support that a

reasonable employee would have felt compelled to resign. Sanders' reassignment did not result in

a reduction in pay or benefits, or a change in hours.[32] Further, Sanders admitted at her deposition

that the new role involved creating care plans and providing nursing care to residents, which is not

menial or degrading, but rather is essential to patient care and work typically performed by

registered nurses.[33] Moreover, there is no evidence that Sanders was subjected to any badgering,

harassment, or humiliation to force her resignation, or that she was reassigned to work under a

younger supervisor. Thus, Sanders has failed to state a claim for constructive discharge.

### C.    Louisiana Whistleblower Statute

Sanders alleges that she was demoted from her position as assisted living unit director and

constructively discharged because she refused to participate in what she alleges to be an illegal

practice of altering official paperwork. The Louisiana whistleblower statute, La. R.S. 23:967,

---

[32] R. Doc. 52-7 at 11-12.
[33] R. Doc. 52-5 at 215-19.

prohibits an employer from retaliating against an employee who reports, threatens to report, or refuses to participate in an illegal work practice. "Although the statute itself does not define 'employer,' courts have consistently applied the definition of 'employer' as set forth in La. Rev. Stat. § 23:302, Louisiana's general employment discrimination statute." *Sebble v. NAMI New Orleans, Inc.*, 2018 WL 929604, at *2 (E.D. La. Feb. 16, 2018) (citing *English v. Wood Group PSN, Inc.*, 2015 WL 5061164, at *10-11 (E.D. La. Aug. 25, 2015); *Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575, 580 (M.D. La. 2002) (definitions of La. R.S. 23:302 apply to La. R.S. 23:967 regardless of the fact that section 967 is found in chapter 9 of title 23, collecting "miscellaneous provisions," rather than in chapter 3-A, which addresses "prohibited discrimination in employment"); *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 691 n.2 (W.D. La. 2011)). Section 302(2)(b) exempts non-profit entities from the definition of employer. Accordingly, non-profit entities are not subject to Louisiana's whistleblower statute. *Sebble*, 2018 WL 929604, at *2 (citing *Jackson v. Xavier Univ. of La.*, 2002 WL 1482756, at *6 (E.D. La. July 8, 2002)); *accord Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, 2011 WL 6046984, at *2 (M.D. La. Dec. 6, 2011) (concluding that a non-profit corporation is not an employer for purposes of La. R.S. 23:302 and 23:967)).

It is undisputed that Christwood is a non-profit entity. Thus, it is not subject to Louisiana's whistleblower statute. As such, Sanders fails to state a claim against Christwood under that law.

## IV. CONCLUSION

Accordingly, for the reasons stated above,

**IT IS ORDERED** that Christwood's motion for summary judgment (R. Doc. 52) is

GRANTED, and Sanders' claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 26th day of June, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE